Joseph Mansbach v. Commissioner, Sylvia Mansbach v. Commissioner.
Mansbach v. Mansbach
Docket Nos. 6157, 6158.
United States Tax Court
1946 Tax Ct. Memo LEXIS 64; 5 T.C.M. (CCH) 924; T.C.M. (RIA) 46240; October 9, 1946
*64 On the evidence, held, the fair market value on December 31, 1941 of 9.847 acres on which the Mansbach Metal Company, Inc. carried on its business was $29,541; and such corporation as of that date had no intangible asset value based on "good will". Carl Runge, Esq., and Richard D. Davis, Esq., Ashland, Ky., for the petitioners. Cecil H. Haas, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve income tax deficiencies for the calendar year 1941, as follows: Joseph Mansbach
$15,727.83
Sylvia Mansbach
10,846.87
The contested issues are whether in determining the amount of the liquidating dividends received by petitioners on shares of stock of Mansbach Metal Company, Inc. upon dissolution in 1941, the respondent properly: (a) Added good will value to the assets; (b) Increased the value of 9.847 acres of land on which the corporation's business was conducted by $9,847, to the amount of $29,541. The case was submitted upon a stipulation of facts, oral testimony and exhibits. The stipulated facts are found as stipulated. Any additional facts are found from the record. *65 Findings of Fact Petitioners are husband and wife, residing at Ashland, Kentucky. Their separate individual income tax returns for the taxable year 1941 were filed with the collector of internal revenue for the district of Kentucky. In 1918, petitioners started the conduct of a business under the name of Mansbach Scrap Iron Company at Ashland. Joseph Mansbach drove a truck and collected metal scrap from mines located in Kentucky and West Virginia. His wife, Sylvia, had charge of the retail office and checked small quantities brought in by individual truckers. In 1927 a branch place of business was opened in Logan, West Virginia. J. T. Fish, a brother of Sylvia, was taken into the business and placed in charge of the branch. In 1933 the business was incorporated under the laws of Kentucky as Themansbach Metal Company, Inc. with a capital of $25,000. The capital stock was issued in exchange for the partnership assets, the corporation assuming the partnership liabilities. The assets transferred included "good will" evaluated at $6,914.05. Prior to 1934 the business was comparatively small, but in that year the company leased what was known as the Meredith property for a yard and *66 installed a shearer to cut scrap metals. The business continued to expand. On April 24, 1940, the corporation purchased from the American Rolling Mill Company, its largest purchaser of scrap metal, a tract of land consisting of 9.847 acres for a consideration of $29,541, or at the rate of $3,000 per acre, at which amount the American Rolling Mill Company had carried the property on its books. This plot was located in Ashland north of and adjacent to the C. & O. railroad tracks and between them and the Ohio River. This purchase did not include riparian rights. Many permanent improvements were made on this land. A warehouse and office building were erected, 7,500 feet of railroad track were laid, a huge machine for compressing automobile bodies and drums into 2,500 pound bales was installed and three additional shearers and two locomotive trains were also installed. The nearest competitors having this compressing equipment for baling light metals, which could only be sold when so processed, are located in Louisville, Cincinnati and Columbus. As the business grew, the amounts of increased capital stock issued by the corporation were paid for mostly by petitioners from dividends and *67 salaries received by them from the corporation. The following tabulation shows the capital, surplus, and net earnings, both before and after all Federal income and excess-profits taxes have been deducted, of the corporation for the periods stated: Date
Capital
Surplus
Total
12-31-35
$25,000.00
$17,826.49
$ 42,826.49
12-31-36
50,000.00
18,751.05
68,751.05
12-31-37
70,000.00
28,446.23
98,446.23
12-31-38
70,000.00
27,129.72
97,129.72
12-31-39
70,000.00
46,770.94
116,770.94
12-31-40
90,000.00
68,307.09
158,307.09
12-31-41
90,000.00
97,218.37
187,218.37
Total for 7 dates
$769,449.89
Average
109,921.41
Net Earnings
After
Before
Year
Taxes
Taxes
1936
$35,973.14
$41,574.11
1937
29,695.18
35,011.38
1938
4,543.17
5,193.15
1939
19,032.07
22,084.07
1940
35,106.97
46,174.59
1941
44,450.76
84,174.55
Total for 6 years
$168,801.29
Average
28,133.55
On August 1, 1941, petitioners executed seven separate trust agreements in which their children and one grandchild were named as beneficiaries, the corpora of which consisted solely of stock of Mansbach Metal Company, Inc. After the *68 execution of these trust agreements there remained in the name of petitioner, Joseph Mansbach, 70 shares and in the name of petitioner, Sylvia Mansbach, 150 shares. Immediately prior to the dissolution of the corporation, it reduced the book values of several tracts of real estate, including the tract of 9.847 acres purchased April 24, 1940. The Mansback Metal Company, Inc. was dissolved on December 31, 1941. In the dissolution of the corporation the real estate occupied by it was conveyed by general warranty deed to Joseph Mansbach as trustee in liquidation for the Mansbach Metal Company and all of the other assets of the company were transferred by bill of sale to the Mansbach Metal Company, a partnership composed of Joseph Mansbach, J. T. Fish, Sylvia Mansbach, Joseph Mansbach, trustee for Sophia Mansbach, Gerald J. Mansbach and Samuel Mansbach, and Sylvia Mansbach, trustee for Hanna Mansbach Solomon, Minnie Rae Mansbach and Selma Mansbach. In both instruments of conveyance, the grantees assumed all liabilities and obligations of the corporation. On the same day, to wit: December 31, 1941, Joseph Mansbach, J. T. Fish, Sylvia Mansbach, Joseph Mansbach, trustee for Sophia Mansbach, *69 Gerald J. Mansbach and Samuel Mansbach, and Sylvia Mansbach, trustee for Hanna Mansbach Solomon, Minnie Rae Mansbach and Selma Mansbach, entered into a partnership agreement whereunder the partners agreed to engage in the scrap metal business for a period of 25 years under the firm name of "Mansbach Metal Company". The following is the balance sheet of the corporation as of December 31, 1941, immediately prior to its dissolution, as shown by its books, and the balance sheet as of that date after certain adjustments were made thereto by respondent: Per
ASSETS
Books
Adjustments
Adjusted
Cash
$ 41,237.04
$ 41,237.04
Notes and Accounts Receivable
59,540.04
59,540.04
Inventory
43,572.45
43,572.45
Stocks, Corp.
945.00
945.00
Machinery and Equipment
123,414.55
123,414.55
Land
25,644.00
$ 9,597.00
35,241.00
Prepaid Ins.
1,911.93
1,911.93
Intangibles
74,714.90
74,714.90
Total
$296,265.01
$84,311.90
$380,576.91
LIABILITIES
Accounts Payable
16,090.94
16,090.94
Notes
17,000.00
17,000.00
Accrued Wages and Expenses
7,139.25
(749.45)
6,389.80
Accrued Misc. Taxes
6,147.15
(1,115.00)
5,032.15
Accrued Federal Income & Ex. Profits Taxes
38,680.48
824.17
39,504.65
Depreciation Reserve
34,626.10
34,626.10
Capital Stock
90,000.00
90,000.00
Surplus
86,581.09
85,352.18
171,933.27
Total
$296,265.01
$84,311.90
$380,576.91
*70 After making the adjustments above set forth, the respondent determined the per share value of the stock of the corporation to be $291.04. In making such determination, the respondent adjusted the values of certain real estate, including the 9.847 acre plot, which respondent determined to be its cost price of $29,541, an increase of $9,847 over the book value. Respondent also determined the assets, as of December 31, 1941, had a good will or intangible value totaling $74,714.90. computed as follows: Average investment tangible assets
$109,921.41
Earnings computed at 12% attribu-
table to tangible assets
13,190.57
Average earnings for period
28,133.55
Earnings attributable to intangibles
$ 14,942.98
Capitalized at 20%
74,714.90
The assets of the Mansbach Metal Company, Inc., as of December 31, 1941, had no intangible or good will value. The fair market value of the 9.847 acres of land in Ashland, on which the business of the corporation was carried on, was $29,541 as of December 31, 1941. Opinion Two distinct issues of fact are presented by this controversy. The first issue involves a determination of the fair market value, on December 31, 1941, of *71 9.847 acres of land on which the business of the Mansbach Metal Company, Inc. was located; and the second issue presents the question as to whether "good will' value attached to the assets of such corporation on said date and, if so, its amount. Petitioners argue that the fair market value of the 9.847 acres on the critical date was $2,000 per acre, notwithstanding the fact that the corporation in April 1940 had paid at the rate of $3,000 per acre for the plot. Petitioners endeaver to support their contention by expert testimony. They assert with some vigor that the character of the experts offered is such that we should accept their testimony in the absence of any expert testimony offered by the respondent. We are impressed with the standing and reputation of petitioners' experts and, in the absence of other competent evidence, might accept it as furnishing as reliable a basis as our own judgment. The opinions of these experts varied as to value and ranged from $2,000 to $2,500 per acre. They, however, were unanimous in their respective view that the value of the land had not fluctuated in the last few years. Such testimony, we think, supports the respondent's contention that the *72 fair market value of the lot was its cost price of $3,000 per acre. That is also the value at which the seller, at the time of the sale, carried the land on its own books. The general rule is that "fair market value" is the price at which property will change hands between parties neither of whom is under compulsion to trade and both knowing the facts. Petitioners suggest that the purchase was not an arm's length transaction since the corporation regarded the land as essential to its business and it could not jeopardize its relationship with its largest purchaser of scrap metal by attempting to negotiate the price rather than pay the price demanded. Assuming the presence of these factors, we think the transaction was an arm's length one, and that the price paid represented the then fair market value of the land. Since the price was that at which the property was carried on its books, the seller apparently took no advantage of its favorable position. Petitioners' evidence establishes the fact that the value of industrial property in that neighborhood did not fluctuate during the period in question. Upon all the evidence we have found as a fact that the fair market value of the 9.847 *73 acres, on December 31, 1941, was $29,541, and sustain the respondent on this issue. The remaining issue relates to the existence of good will as an asset, the value of which the respondent fixed at $74,714.90. Petitioners deny the existence of any intangible value. In support of their position petitioners offered the testimony of three expert witnesses who have been connected with the metal scrap business for long periods of time. Each witness expressed the opinion that the Mansbach Metal Company, Inc. had no good will value. All were acquainted with the operations of the corporation and knew petitioner, Joseph Mansbach, to whose industry, ability and reputation for fair dealing they ascribed the corporation's financial success. The testimony of these witnesses further established the fact that the metal scrap business is hazardous, and that in recent sales of such businesses in the neighborhood the price of each was fixed solely upon the value of the tangible assets. We do not deem it necessary to determine as a matter of law whether a scrap metal business is of such character that "good will" may or may not exist as an asset. We are convinced that upon the record made in this proceeding, *74 petitioners have established that the Mansbach Metal Company, Inc. had no intangible asset value as of December 31, 1941, and have so found as an ultimate fact. This issue is determined in favor of petitioners. Decisions will be entered under Rule 50.